1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

12

13

14

15

PRISCILLA DOSS, Individually;
THEONIE LABEE, Individually;
PATRICE MILLER, Individually;
PATRICIA NORRIS, Individually;
MARY HAYES, Individually;

Plaintiffs,

v.

FRANCISCAN HEALTH SYSTEM d/b/a
ST. JOSEPH MEDICAL CENTER,

Defendant.

CASE NO. C11-5163 BHS

ORDER GRANTING
PLAINTIFFS' MOTION FOR AN
EXTENSION OF TIME AND
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

16

17

18

19

20

21

22

      This matter comes before the Court on Defendant Franciscan Health System d/b/a

St. Joseph Medical Center's ("SJMC") motion for summary judgment (Dkt. 58) and

Plaintiffs Theonie Labee ("Labee"), Patrice Miller ("Miller"), and Patricia Norris'

("Norris") (collectively "Plaintiffs") motion for extension of time (Dkt. 88). The Court

has considered the pleadings filed in support of and in opposition to the motions and the

remainder of the file and hereby grants the motions for the reasons stated herein.

# I. PROCEDURAL HISTORY

On January 24, 2011, Plaintiffs Priscilla Doss ("Doss") and Mary Hayes ("Hayes") (collectively "Original Plaintiffs") filed a complaint against SJMC in the Washington State Superior Court in and for the County of Pierce. Dkt. 2, Declaration of Elena C. Burt, Exh. B ("Complaint"). The Original Plaintiffs asserted nine causes of action: (1) race discrimination; (2) national origin discrimination; (3) hostile work environment; (4) "disparate treatment"; (5) "disparate impact"; (6) unlawful retaliation; (7) negligence, negligent infliction of emotional distress, negligent hiring, retention and supervision; (8) intentional infliction of emotional distress, outrage; and (9) wrongful discharge (actual and constructive). Complaint, ¶¶ 6.1-6.9.

On July 27, 2011, the Original Plaintiffs filed a motion to amend their complaint "to add causes of action for unlawful discrimination in violation of public policy and the common law, and for violation of 42 U.S.C. § 1981; 42 U.S.C. § 12132; and Title VII of the Civil Rights Act of 1964." Dkt. 17. On August 30, 2012, the Court granted the motion in part and denied the motion in part. Dkt. 22.

On October 17, 2011, the Original Plaintiffs filed an Amended Complaint. Dkt. 23. In that complaint, Doss asserted a violation of Title VII of the Civil Rights Act of 1964 and the Original Plaintiffs asserted (1) Violations of 42 U.S.C. § 1981; (2) Racial Discrimination in Violation of Public Policy and the Common Law; (3) Hostile Work Environment in Violation of Public Policy and the Common Law; (4) Disparate Treatment in Violation of Public Policy and the Common Law; (5) Disparate Impact in Violation of Public Policy and the Common Law; (6) Unlawful Retaliation in Violation

of Public Policy and the Common Law; (7) Unlawful Constructive and/or Actual Discharge (Race & Sex) in Violation of Public Policy and the Common Law; (8) Negligence, Negligent Infliction of Emotional Distress, Hiring, Training, Supervision, and Retention; and (9) Intentional Infliction of Emotional Distress, Outrage. *Id.*, ¶¶ 6.1–6.10.

On August 5, 2011, the Original Plaintiffs filed a demand for a jury. Dkt. 18. On October 24, 2011, SJMC filed a motion to strike the demand. Dkt. 24. On December 19, 2011, the Court granted SJMC's motion and struck Plaintiffs' untimely demand for a jury. Dkt. 32.

On June 8, 2012, Doss filed a motion to dismiss her individual claims without prejudice. Dkt. 43. On June 26, 2012, the Court granted the motion. Dkt. 46.

On August 30, 2012, the Court granted Hayes' stipulated motion to dismiss her individual claims. Dkt. 54.

On September 3, 2012, SJMC filed three motions for summary judgment, one motion for each remaining Plaintiff. Dkts. 58, 62, & 71. On September 25, 2012, Plaintiffs responded (Dkt. 78) and filed a motion for extension of time (Dkt. 80). On September 28, 2012, SJMC replied to each of its motions (Dkts. 81, 83, & 86) and responded to Plaintiffs' motion (Dkt. 88).

On October 6, 2012, Labee and Miller filed a notice that they have settled their claims against SJMC. Dkt. 94. Therefore, SJMC's motions regarding Labee's and Miller's claims are moot and shall be removed from the calendar.

## II. FACTUAL BACKGROUND

Norris is an African American woman who was a Health Unit Coordinator in SJMC's Surgery Admission Unit from September 2008 until her termination in November 2010.  Dkt. 78–4, Declaration of Patricia Norris, ¶¶ 1, 9.  On May 24, 2012, Norris' manager Jan Rust ("Rust") requested that Norris take her lunch break at 9 AM every day.  *Id.*, ¶ 12.  Norris states that other nurses – who were Caucasian – were not required to take their breaks at specific times.  *Id.*  Norris also claims that Rust and charge nurse Bonnie Klein ("Klein") began tracking Norris's time on breaks by requiring her to write her time on a white board, but did not require other employees – Caucasian employees – to record their time on the white board.  *Id.*, ¶ 13.

On June 23, 2010, Klein approached Norris regarding whether Norris had taken her break that morning.  Norris declares that Klein was very confrontational and invaded Norris's personal space pointing her finger in Norris's face.  *Id.*, ¶ 20.  Norris went to Perioperative clinical director Gayle Eward's ("Eward") office to report what Norris claims was discrimination and harassment she had been receiving from Klein and Rust. *Id.*  On June 24, 2010, Norris met with Jaime Broadfoot ("Broadfoot ") and Eward in HR and informed them of Rust and Klein's treatment.  *Id.*, ¶ 22.

On July 14, 2010, Norris returned to work from leave and Klein continued to track her break times on the white board and her early fixed lunch times.  *Id.*, ¶ 23.  Norris sent an email to Eward, but Eward did not respond.  *Id.*  Another nurse, Joleen Philpott ("Philpott") mentioned that Klein was supposed to make a schedule for everyone now

1    and yelled out on the unit floor "this is discrimination" and laughed.  *Id.*   Norris felt like

2    Philpott was mocking her.  *Id.*

3        On August 5, 2010, Norris was placed on "low census" and was therefore sent

4    home.  *Id.*, ¶ 25.   When she arrived home, she checked her Facebook account and saw a

5    message that contained a conversation between Philpott and her husband that referenced

6    people at work and "referring to the staff at work as niggers treating [Philpott] like the

7    plague."  *Id.*, ¶ 26. On August 6, 2012, Norris gave Eward a copy of the offensive

8    Facebook message and also gave a copy to Colleen Fallon-Menke ("Fallon-Menke"),

9    Rust's replacement.  *Id.*, ¶ 27.   Before Fallon-Menke even read the message, she took out

10   a pen and paper and began questioning Norris.  *Id.*

11       On August 18, 2010 Norris received an anonymous scanned message containing

12   racial slurs.  *Id.*, ¶ 30.   Norris reported it to Broadfoot in HR and forwarded it to

13   Perioperative clinical director Ruth Flint upon request.  *Id.*

14       On August 20, 2010 Norris called in sick due to a doctor's appointment.  *Id.*, ¶ 31.

15   While filling a prescription, she received an anonymous note on her car stating "Joleen

16   said she is going to shoot the black co-workers brains out watch your backs."  *Id.*

17       In early September, Norris returned to work from medical leave and received

18   another anonymous telephone call involving a racial slur.  *Id.*, ¶ 32.   SJMC sent her home

19   on paid leave.  *Id.*   After medical leave, Norris returned to work and received additional

20   harassing calls referencing racial slurs.  *Id.*, ¶ 34.   Management conducted an

21   investigation, concluded that she was faking the calls and/or notes, and terminated her

22

employment.  Dkt. 59, Declaration of Sharon Royne, ¶ 38; dkt. Declaration of Colleen

Fallon-Menke, Exh. 6 ("Notice of Discharge").

## III. DISCUSSION

### A.      Motion for Extension of Time

Plaintiffs request an extension of 53 minutes for filing their collective response.

Dkt. 80.  SJMC does not object, and the Court finds no prejudice in the small extension.

Therefore, the Court grants Plaintiffs' motion.

### B.      Motion for Summary Judgment

SJMC moves for summary judgment on all of Norris' claims.  Instead of

responding on a claim-by-claim basis, Norris submitted one paragraph of "analysis" for

the Court's consideration.  *See* Dkt. 78 at 17–18.  Norris fails to cite a single law or case.

*Id*.  Based on a liberal reading of Norris' response, the Court finds that Norris has

attempted to show that material questions of fact exist as to her disparate treatment and

hostile work environment claims (*id*. at 17–18).  Therefore, the Court will only address

these claims and grants SJMC's motion as to any other asserted claim.  *See Carmen v.*

*San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (where no

factual showing is made in opposition to a motion for summary judgment, the District

Court is not required to search the record *sua sponte* for some genuine issue of material

fact.).

### 1.      Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

1    fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

2    The moving party is entitled to judgment as a matter of law when the nonmoving party

3    fails to make a sufficient showing on an essential element of a claim in the case on which

4    the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

5    323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

6    could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

7    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

8    present specific, significant probative evidence, not simply "some metaphysical doubt").

9    *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

10   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

11   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

12   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

13   626, 630 (9th Cir. 1987).

14        The determination of the existence of a material fact is often a close question. The

15   Court must consider the substantive evidentiary burden that the nonmoving party must

16   meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

17   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

18   issues of controversy in favor of the nonmoving party only when the facts specifically

19   attested by that party contradict facts specifically attested by the moving party.  The

20   nonmoving party may not merely state that it will discredit the moving party's evidence

21   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

22   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

1    nonspecific statements in affidavits are not sufficient, and missing facts will not be

2    presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3            **2.      Disparate Treatment**

4            Norris has brought her race discrimination claim under 42 U.S.C. § 1981 because

5    she failed to meet the prerequisites for Title VII claims. *See* Dkt. 22.  However, the

6    "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981

7    action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003).

8            A plaintiff's Title VII claim is analyzed through the burden-shifting framework of

9    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this analysis, a plaintiff

10   must first establish a *prima facie* case of employment discrimination.  *Hawn v. Executive*

11   *Jet Management, Inc.*, 615 F.3d 1151 (9th Cir. 2010).   If plaintiff establishes a prima

12   facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to

13   articulate some legitimate, nondiscriminatory reason for the challenged action." *Id*.  If

14   defendant meets this burden, plaintiff must then raise a triable issue of material fact as to

15   whether defendant's proffered reasons for the termination are mere pretext for unlawful

16   discrimination. *Id*.  The employer's proof of legitimate, nondiscriminatory reasons for its

17   action dispels the inference of discrimination raised by plaintiff's prima facie case.  The

18   *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate burden

19   of persuading the trier of fact that defendant intentionally discriminated against plaintiff.

20   *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

21           Plaintiff may establish a *prima facie* case based on circumstantial evidence by

22   showing: (1) that she is a member of a protected class; (2) that she was qualified for her

1  position and performing her job satisfactorily; (3) that she experienced adverse

2  employment actions; and (4) that "similarly situated individuals outside [her] protected

3  class were treated more favorably, or other circumstances surrounding the adverse

4  employment action give rise to an inference of discrimination."  *Hawn*, 615 F.3d at 1156

5  (9th Cir. 2010); *see also Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir.

6  2004).

7       In this case, Norris alleges that she was "harassed by others" and that SJMC

8  "attempted to minimize racism allegations."  Dkt. 78 at 17.  Even if anonymous

9  communications could be the basis for a *prima facie* case of racial discrimination, Norris

10  has failed to counter SJMC's evidence that it conducted an exhaustive investigation to

11  determine the origins of the communications.  SJMC has shown that it took adequate

12  steps to address the issue.  *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001)

13       With regard to the requirement of early breaks, Norris fails to address the fact that

14  SJMC insisted on the early breaks to comply with Washington's labor laws.  She also

15  fails to address the fact that other employees were not similarly situated because Norris

16  started her shift earlier than the other employees.

17       Therefore, the Court grants SJMC's motion for summary judgment on Norris's

18  discrimination claim because Norris has failed to show that a material question of fact

19  exists on every element of this claim.

20  **3.    Hostile Work Environment**

21       To establish a *prima facie* case for a hostile work environment claim, a plaintiff

22  must raise a triable issue of fact as to whether (1) she was subjected to verbal or physical

1   conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was

2   sufficiently severe or pervasive to alter the conditions of her employment and create an

3   abusive work environment. *Surrell v. California Water Serv.*, 518 F.3d 1097, 1108 (9th

4   Cir. 2008).  In considering whether the discriminatory conduct was "severe or pervasive,"

5   the Court looks to "all the circumstances, including the 'frequency of the discriminatory

6   conduct; its severity; whether it is physically threatening or humiliating, or a mere

7   offensive utterance; and whether it unreasonably interferes with an employee's work

8   performance.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting

9   *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).  In addition, the working

10   environment must be both objectively hostile, as perceived by a reasonable person, and

11   subjectively hostile, as perceived by the plaintiff herself.  *See, e.g.*, *Leliand v. City and

12   County of San Francisco, Public Utilities Commission*, 576 F. Supp. 2d 1079, 1101 (N.D.

13   Cal. 2008).

14        In this case, Norris has failed to submit evidence that creates a triable issue of fact

15   as to an objectively hostile work environment.  While she has submitted evidence of

16   offensive utterances (Dkt. 78 at 9, 15), the conduct is neither severe nor pervasive.

17   Therefore, the Court grants SJMC's motion for summary judgment on Norris's hostile

18   work environment claim because she has failed to show that a material question of fact

19   exists on every element of the claim.

20

21

22

1

**IV. ORDER**

2      Therefore, it is hereby **ORDERED** that SJMC's motion for summary judgment

3 (Dkt. 58) and Plaintiffs motion for extension of time (Dkt. 88) are **GRANTED**.  The

4 Clerk is directed to enter **JUDGMENT** for SJMC.

5      Dated this 18th day of October, 2012.

6

7

                              _____

8                               BENJAMIN H. SETTLE
                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22